# UNITED STATES DISTRICT COURT
## MIDDLE DISTRICT OF FLORIDA
### TAMPA DIVISION

**ELIZABETH BELLO-CAMP,**[1] **et al.**

        **Plaintiffs,**

**v.**                                     **Case No.  8:08-cv-885-T-23TBM**

**ATTORNEY GENERAL, USA, et al.,**

        **Defendants.**

_____/

## REPORT AND RECOMMENDATION

      THIS MATTER is before the court on referral by the Honorable Steven D. Merryday for a Report and Recommendation on the **Defendants' Combined Motion to Dismiss, Remand or, in the Alternative, Sever** (Doc. 20); Plaintiffs' response in opposition (Doc. 25); Plaintiffs' **Motion to Certify Class** (Doc. 27); and Defendants' response thereto (Doc. 35).  The parties have also filed notices of supplemental authority in support of their respective positions.  *See* (Docs. 36-41).

### I.

### A.

      In May 2008, Elizabeth Bello-Camp and Samira Suljic, individually and on behalf of all others similarly situated, filed a Class Action Complaint for Review of Naturalization

---

[1]The other named Plaintiffs include Elizabeth Adelizee, Eddy Hernandez, Luis Marquez, Anton Goubrial, Larissa Ali, Rose Ainslie, Nidal Elsawalhi, Mohammed Brimo, Oscar K. Gomez, Snejanna Dunn, Silvia Aleman, Ismail Elmcharfi, and Oleg Gulyanskiy.

Applications Pursuant to 8 U.S.C. § 1447(b). (Doc. 1). The Complaint identified the Defendants as the United States Attorney General, the Secretary of the Department of Homeland Security, the Director of the Federal Bureau of Investigation ("FBI"), the District Director of the United States Citizenship and Immigration Services ("USCIS"), and the United States. In response, the Defendants moved to dismiss on grounds of mootness and lack of standing. (Doc. 11).

On July 21, 2008, Plaintiff Bello-Camp and thirteen other plaintiffs, individually and on behalf of all others similarly situated, filed their Amended Class Action Complaint for Review of Naturalization Applications Pursuant to 8 U.S.C. § 1447(b).[2] (Doc. 12). In summary, the named Plaintiffs allege that they are each lawful, permanent residents of the United States who have filed applications for naturalization to become citizens of the United States. They allege that, while each has passed the naturalization exam, the Defendants have unlawfully and unreasonably delayed the adjudication on their naturalization applications.[3] Plaintiffs maintain that federal law requires the USCIS to reach a decision on a naturalization application within 120 days of the naturalization examination and, in the instance of each of the Plaintiffs, the USCIS has failed to comply with this deadline. According to Plaintiffs, the USCIS has asserted in each instance that the delay is caused by the failure to complete "name checks." Plaintiffs allege that their circumstances are not unique; rather, they are typical of tens of thousands of similarly situated naturalization applicants throughout the United States

---

[2]The Amended Complaint drops Ms. Suljic as a named Plaintiff. The Defendants remain the same.

[3]In the case of Ms. Bello-Camp, her application had been approved by the time the Amended Complaint was filed but she was still waiting to be sworn in as a citizen.

who have suffered, and will continue to suffer, Defendants' unreasonable and unlawful delays in adjudicating and rendering timely decisions in naturalization applications due to pending name checks. They seek certification of a class comprised of all lawful, permanent residents of the United States residing in the Middle District of Florida who have submitted naturalization applications to the USCIS but whose applications have not been adjudicated and decided within 120 days of the date of the initial examination due to the pendency of an FBI name check.

Plaintiffs contend this court has jurisdiction pursuant to 8 U.S.C. § 1447(b); 28 U.S.C. §§ 1331, 1361, 1651, and 2201; and 5 U.S.C. § 701. By their general allegations, each applicant seeking naturalization is required to comply with certain legal and regulatory requirements. Qualifying individuals who wish to become naturalized citizens must seek application to the USCIS, the agency charged with the responsibility of adjudicating naturalization applications. Upon the submission of such applications, the USCIS is obliged to conduct an investigation of each applicant, including a criminal background check, as well as an interview and examination. After an applicant successfully completes the process, he/she may be sworn in as a citizen of the United States. Citing 8 C.F.R. § 335.3(a), Plaintiffs assert that the USCIS must render a decision to grant or deny the application within 120 days of the date of the initial examination. If an applicant has complied with all requirements for naturalization, the USCIS officer must grant the naturalization application. *Id.* In accordance with the provisions of 8 U.S.C. § 1447(b), if the USCIS fails to render a decision on a naturalization application within 120 days of the naturalization examination, the applicant may apply to the United States District Court in the district in which the applicant resides for

3

a hearing on the matter. Plaintiffs maintain that once an applicant applies to a district court, the district court retains exclusive jurisdiction over the application and may determine the matter or remand to the USCIS with appropriate instructions.

Regarding the name checks, Plaintiffs maintain that in 2002, without promulgating regulations and without statutory authorization, the USCIS arbitrarily altered the naturalization process by requiring all applicants to pass a so-called "name check" to be conducted by the FBI, in addition to any other background investigation. Plaintiffs maintain that such name checks - searches of FBI files and similar records - are not authorized or required by federal regulations yet the USCIS will not approve applications absent such name checks. By Plaintiffs' account, these name checks are often the cause of lengthy delays in the naturalization adjudication process. Plaintiffs also maintain that, in April 2006, the USCIS implemented a new policy and practice of delaying naturalization examinations until after name checks are completed. As a result, Plaintiffs contend that unreasonable and extraordinary delays now occur even before any examination occurs. By Plaintiffs' allegations, Defendants have a policy, pattern, and practice of unlawfully failing to render decisions on naturalization applications within 120 days as required due to pending name checks and a policy, pattern, and practice to unreasonably delay rendering a decision on naturalization applications due to pending name checks. Defendants, Attorney General and Director of the FBI, are alleged to have a policy, pattern, and practice of unlawfully withholding and unreasonably delaying the completion of name checks, with full knowledge that the USCIS will not adjudicate the naturalization applications of the proposed Plaintiffs' class until the name checks are completed. According to Plaintiffs, these FBI name checks

are not authorized by law and their requirement was unlawfully and arbitrarily implemented and enacted without the necessary period of public notice and public comment.

Plaintiffs, individually and on behalf of a proposed class, assert three counts. In Count One, Plaintiffs assert that because Defendants have unlawfully failed to render a decision on their naturalization applications within the mandated 120 days, each Plaintiff (and proposed Plaintiff class member) is entitled to a hearing before this court on his or her naturalization application in accordance with the provisions of § 1447(b). Upon such hearing, Plaintiffs urge that the court should grant their naturalization applications. Alternatively, they urge that the court should remand the naturalization applications of the named Plaintiffs and those of all members of the proposed class to the USCIS with instructions to render a decision within sixty days. By Count Two, Plaintiffs allege that the Administrative Procedures Act ("APA") requires administrative agencies to conclude matters presented to them "within a reasonable time." *See* 5 U.S.C. § 555(b). By their allegations, the failure of the Defendants to render a decision on the pending naturalization applications of the Plaintiffs' class within 120 days violates the APA at numerous sections and they urge that declaratory and injunctive relief is warranted. In Count Three, Plaintiffs acknowledge that the USCIS is required to receive a report of an FBI criminal background check before a naturalization application can be granted. *See* 8 C.F.R. § 335.2(b). However, they allege that the requirement that there be a name check constitutes a substantive rule which departs from prior policy and practice that was implemented without public notice and without providing a period of public comment contrary to the APA, 5 U.S.C. § 553. Again, Plaintiffs seek declaratory and injunctive relief.

B.

In their combined motion to dismiss (Doc. 20), Defendants initially assert that the FBI has completed all name checks for the named Plaintiffs[4] and the USCIS has adjudicated eight of their applications. Of these eight, Plaintiffs Ainslee, Aleman, Bello-Camp, and Elsawalhi (and former Plaintiff Suljic) were approved and sworn in as citizens. Additionally, Plaintiffs Gomez and Ali have been approved and are scheduled to be sworn in as citizens in August 2008. Plaintiff Marquez's application has been denied because he was not lawfully admitted as a permanent resident prior to applying. As for Plaintiffs Adelizee, Hernandez, Goubrial, Brimo, Dunn, Elmcharfi, and Gulyansky, they are pending final adjudication of their applications.[5] Given the status of these applications, Defendants assert that any claims against the FBI for failing to conduct name checks are moot because all of the name checks have been completed. As for those named Plaintiffs approved for citizenship, Defendants argue that their claims are moot and should be dismissed. As for the remaining applicants whose applications are complete but remain pending and Mr. Marquez's application, Defendants urge that this court should remand their applications to the USCIS pursuant to § 1447(b) for further proceedings and without instructions or deadlines.[6] Alternatively, if the

---

[4]In support, Defendants proffer the Declaration of Michael A. Cannon. (Doc. 20-2).

[5]*See* Decl. Linda Hopkins (Doc. 20-3), Ex. 3 (composite) (Doc. 20-4).

[6]In legal support of the proposition that remand is appropriate because the USCIS has the expertise and is better equipped to conduct the naturalization assessment, Defendants cite *Odeh v. Chertoff,* No. 6:06-cv-367-Orl-19KRS, slip op. at 5 (M.D. Fla. Sept. 14, 2006) (quoting *INS v. Ventura,* 537 U.S. 12, 16 (2002)); *Khelifa v. Chertoff,* 433 F. Supp. 2d 836, 844 (E.D. Mich. 2006); *El-Daour v. Chertoff,* 417 F. Supp. 2d 679, 684 (W.D. Pa. 2005); *Izraileva v. Chertoff,* No. 8:07-cv-21-T-27MSS, 2008 WL 1766663, at * 1 (M.D. Fla. Apr. 17, 2008); *Karimine v. USCIS,* No. 6:07-cv-108-Orl-31KRS, 2007 WL 2021949, at * 2 (M.D. Fla. July 11, 2007); *Hussein v. Gonzales,* 474 F. Supp.2d 1265, 1267 (M.D. Fla. 2007). In

court declines to remand the non-moot Plaintiffs, Defendants urge that their claims should be severed because they do not arise out of the same transaction or occurrence and they do not share common questions of law or fact.[7]

Regarding Plaintiffs' claims under the APA, Defendants assert that the claims in Count Two brought by those already approved should also be dismissed as moot. As for the remaining Plaintiffs, Defendants urge that their claims fail because they have an adequate remedy under § 1447(b).[8] They argue further that judicial review is precluded under the APA where, as here, agency action is committed to agency discretion by law.[9] They maintain that neither the FBI nor USCIS are required to render a decision within 120 days, and the USCIS, as the agency entrusted with administering the naturalization laws, is entitled to deference in

_____

support of its position that the remand should be without deadlines or instructions, the Defendants cite *Antonishin v. Keisler*, No. 06-2518, 2007 WL 2788841, at *4 (N.D. Ill. Sept. 20, 2007).

[7]In support, Defendants cite *Coughlin v. Rogers*, 130 F.3d 1348, 1350-51 (9th Cir. 1997); *Shamdeen v. Gonzales*, No. C07-164P, 2007 WL 1217702, at *2 (W.D. Wash. Apr. 23, 2007); *Abdelkarim v. Gonzales*, No. 06-14436, 2007 WL 1284924, at *4-5 (E.D. Mich. Apr. 30, 2007).

[8]For the proposition that § 1447(b) provides an adequate remedy, Defendants cite *United States v. Fausto*, 484 U.S. 439, 448-49 (1988); *Eldeeb v. Chertoff*, No. 8:07-cv-236-T-17EAJ, 2007 WL 2209231, at *18 (M.D. Fla. July 30, 2007); and *Antonishin,* 2007 WL 2788841, at *5; *but see, Roshandel v. Chertoff*, No. C07-1739-MJP, 2008 WL 1969646, at *5 (W.D. Wash. May 5, 2008).

[9]In support, Defendants cite *Heckler v. Chaney*, 470 U.S. 821 (1985); *Antonishin*, 2007 WL 2788841, at *6; and *Shalabi v. Gonzales*, No. 4:06-cv-866-RWS, 2006 WL 3032413, at *5 (E.D. Mo. Oct. 23, 2006).

how it chooses to effectively discharge its duties.[10]  Thus, Defendants contend judicial review

is inappropriate.

As for Count Three, Defendants urge dismissal is appropriate because the Plaintiffs

lack standing given that the name checks have been completed.  Alternatively, Defendants

argue that even if standing exists, the claim fails because the November 2002 decision to

expand the scope of background searches was simply an interpretive rule on the meaning of

the congressionally mandated "full criminal background check" and thus is exempt from the

APA's notice and comment requirement.[11]  Defendants also urge that the court should decline

jurisdiction over the claim under the doctrine of prudential mootness given the ongoing

improvements to the name check program made by the FBI and USCIS.[12]

In response, Plaintiffs initially move to strike exhibits 1, 2, and 4 of the Defendants'

motion to dismiss and any corollary arguments, urging that the same are inappropriate for

consideration on a motion brought pursuant to Rule 12(b)(6).  Given that these exhibits

introduce facts not within the pleadings and are not otherwise relevant to any claim related to

the court's jurisdiction, Plaintiffs urge that they may not be considered on this motion.  With

---

[10]*See Chevron USA, Inc. v. Natural Res. Def. Council, Inc.*, 467 U.S. 837, 844 (1984); *Vt. Yankee Nuclear Power Corp. v. Natural Res. Def. Council, Inc.*, 435 U.S. 519, 543 (1978); *Eldeeb*, 2007 WL 2209231, at *12.

[11] Defendants cite *Hani v. Gonzales* No. 3:07-cv-517-S, 2008 WL 2026092, at *5 (W.D. Ky. May 8, 2008); *Wang v. Gonzales*, No. 07-02272, 2008 WL 45492, at *2 (D. Kan. Jan. 2, 2008); *Antonishin*, 2007 WL 278841, at *8; *Ahmadi v. Chertoff*, No. C07-03455-WHA, at *8-9, 2007 WL 3022573 (N.D. Cal. Oct. 15, 2007) and *Aman v. Gonzales*, No. 07-cv-00223-EWN, 2007 WL 2694820, at *3 (D. Colo. Sept. 10, 2007) in support.

[12]*See* Decl. Michael A. Cannon (Doc. 20-2); *see also Chamber of Commerce v. U.S. Dep't of Energy*, 627 F.2d 289, 291 (D. D.C. 1980)(citing *A.L. Mechling Barge Lines, Inc. v. United States*, 368 U.S. 324, 331 (1961)).

these exhibits stricken, Plaintiffs assert that the claims against the FBI are not moot as there is no evidence that they have completed the name checks. Moreover, because the FBI owes naturalization applicants a duty to complete the name checks within a reasonable time and there is no showing that it complied with that duty on any of Plaintiffs' applications, Plaintiffs contend that the claims for delay under § 1447(b) and the APA are not moot.

In support of the argument that the cases should not be remanded, Plaintiffs argue that under § 1447(b), the district court has exclusive jurisdiction and Defendants are without authority to continue adjudicating applications once suit is filed under that provision.[13] In

---

[13]The question of the USCIS's authority to grant or deny applications once suit is filed in the district court underlies the § 1447(b) issues raised in this case. There is a split of authority over whether the filing of suit under this provision divests the USCIS of any authority to act on the pending applications. Many courts have held that the grant or denial of an application after suit has been filed is rendered a nullity by virtue of the court's exclusive jurisdiction vested by § 1447(b). *See Etape v. Chertoff*, 497 F.3d 379, 388 (4th Cir. 2007) (holding that USCIS did not have jurisdiction to act when it denied naturalization applications after § 1447(b) lawsuit had been filed)*; Castracani v. Chertoff*, 377 F. Supp. 2d 71, 75 (D. D.C. 2005) (approval of plaintiff's naturalization application after the filing of a § 1447(b) action was invalid because filing of complaint vested exclusive jurisdiction with court to approve or remand with instructions); *Izraileva v. Chertoff*, 2007 WL 3120255, at *2 (M.D. Fla. Oct. 23, 2007) (denial of plaintiff's naturalization application four months after suit was filed was effectively a nullity because the USCIS did not have jurisdiction to act). Here, the parties argue the court's exclusive jurisdiction as it suits their purposes.

Upon my consideration, the more sensible view is that the USCIS may continue to process applications even after suit is filed in the district court. I agree with Judge Steele of this court who, in interpreting § 1447(b) to confer concurrent jurisdiction upon the district court and the USCIS, stated that, "[i]t simply makes no sense to interpret a statute intended to speed up the process to mean that the administrative process must come to a grinding halt upon filing of a federal lawsuit." *Fatayer v. Swacina*, 2008 WL 4279688, at *3 (M.D. Fla. Sept. 15, 2008) (noting that the Eleventh Circuit has not addressed the issue of whether § 1447(b) vests "exclusive" jurisdiction in the district court). It follows that allowing the USCIS to continue to perform its duties of investigating and adjudicating applications while a lawsuit is pending "will advance the congressional goal of timely resolution of naturalization applications." *Al-Saleh v. Gonzales*, No. 2:06-CV-00604 TC, 2007 WL 990145, at *2 (D. Utah Mar. 29, 2007). This is the more practical approach, particularly when it is considered that even in those cases in which the district court is found to have exclusive jurisdiction, courts routinely remand the matter to the USCIS to (again) adjudicate a plaintiff's application

effect, they argue that any action taken by the USCIS since the filing of this suit is a nullity.

Since it is undisputed that the Defendants did not comply with the 120 day requirement in

§ 1447(b), Plaintiffs contend the court should keep the cases and adjudicate the applications.

They also urge that since named Plaintiffs share common claims and are properly joined, no

severance is required, and since each has satisfied the requirements for naturalization, the

court is fully capable of adjudicating the approval of their applications.  Finally, Plaintiffs

urge the court to keep their claims through adjudication so as to prevent Defendants from

derailing, by way of mootness, their claim for class relief.

      As for their APA claims, Plaintiffs urge that they have amply stated their claims for

unreasonable delay in Count Two.  Plaintiffs argue that such claims are not precluded merely

because of the availability to raise a claim under § 1447 (b) because that provision cannot

provide meaningful relief for the broad systemic challenges raised by the Plaintiffs.  As for

Count Three, they urge that the USCIS dramatically altered the naturalization process by

requiring all applicants to pass the FBI name check.  Because it was promulgated and

implemented without public notice or comment, Plaintiffs urge that the rule is without the

force or effect of law.  While Plaintiffs acknowledge that interpretative rules of an agency are

exempt from such requirements under the APA, they urge that this was a substantive rule

affecting, as it does, the approval or denial of the naturalization benefit.  As such, Plaintiffs

urge that the USCIS rule should be declared without the force or effect of law.

---

because the majority of courts have recognized that the administrative agency has more
experience and expertise in doing so.  This report and my recommendation is premised on the
belief that the actions taken by the USCIS after suit is filed are not null and void.

II.

A motion to dismiss pursuant to Fed. R. Civ. P. 12(b)(1) is a motion challenging the subject matter jurisdiction of the court. Jurisdiction may be attacked facially or factually. *Morrison v. Amway Corp.*, 323 F.3d 920, 924 n. 5 (11th Cir. 2003). In a facial challenge, a court assumes the allegations in the complaint are true and determines whether the complaint sufficiently alleges a basis for subject matter jurisdiction. *Lawrence v. Dunbar*, 919 F.2d 1525, 1529 (11th Cir. 1999). On the other hand, factual attacks challenge the "existence of subject matter jurisdiction in fact, irrespective of the pleadings, and matters outside the pleadings, such as testimony and affidavits, are considered." *Id.* In this case, Defendants are facially attacking the claim by arguing the federal statutes are insufficient to confer subject matter jurisdiction. Accordingly, Plaintiff's allegations are accepted as true for the purposes of the instant motion. *See id.*

When reviewing a motion to dismiss, the court may consider documents attached to the complaint or directly referred to in the complaint, and doing so will not convert the motion to one for summary judgment. *See* Fed. R. Civ. P. 10(c); *Solis-Ramirez v. U.S. Dep't of Justice*, 758 F.2d 1426, 1430 (11th Cir. 1985); *Shibata v. Lim*, 133 F. Supp. 2d 1311, 1315 (M.D. Fla. 2000). A court also may consider documents attached to a motion to dismiss without converting the motion into one for summary judgment if the attached documents are central to the plaintiff's claim and undisputed in terms of authenticity. *See Horsley v. Feldt*, 304 F.3d 1125, 1134 (11th Cir. 2002).

A motion to dismiss pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure is a motion attacking the legal sufficiency of a complaint. In deciding such a motion, the court must accept the facts pleaded as true and construe them in a light most

favorable to the plaintiff. *United States v. Pemco Aeroplex, Inc.*, 166 F.3d 1311, 1313 (11th Cir. 1999); *Pub. Citizen, Inc. v. Miller*, 992 F.2d 1548 (11th Cir. 1993) (per curium). Rule 8(a)(2) requires only "a short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2). While a complaint does not need detailed factual allegations to meet this standard, a plaintiff must provide the grounds of his entitlement to relief beyond labels, conclusions, and a formulaic recitation of the elements of a cause of action. *Bell Atlantic Corp. v. Twombly*, 127 S. Ct. 1955, 1964-65 (2007) (abrogating *Conley v. Gibson*, 355 U.S. 41, 47 (1957)). To survive a Rule 12(b)(6) motion, the factual allegations of a complaint must do more than state a speculative right to relief on an assumption that all the allegations in the complaint are true. *Bell Atlantic*, 127 S. Ct. at 1965 (citations omitted). In practice, this standard requires the complaint to "contain either direct or inferential allegations respecting all the material elements necessary to sustain recovery under *some* viable legal theory." *Id.* at 1969 (quoting, with emphasis in the original, *Car Carriers, Inc. v. Ford Motor Co.*, 745 F.2d 1101 (7th Cir. 1984)). The test is not whether the complainants will ultimately prevail, but whether they are entitled to offer evidence in support of the claims pleaded. *Scheuer v. Rhodes*, 416 U.S. 232, 236 (1974).

## III.

### A.

Count One of the Amended Complaint asserts the right to a judicial determination of naturalization applications pursuant to 8 U.S.C. § 1447(b). This statute provides:

> If there is a failure to make a determination under section 1446 of this title before the end of the 120-day period after the date on which the examination is conducted under this section, the applicant may apply

> to the United States district court for the district in which the
> applicant resides for a hearing on the matter. Such court has
> jurisdiction over the matter and may either determine the matter or
> remand the matter, with appropriate instructions, to the Service to
> determine the matter.

8 U.S.C. § 1447(b).

By their motion, Defendants do not contest that Plaintiffs' applications were not processed within the 120-day period.[14] Rather, Defendants argue that Plaintiffs' claims should be dismissed or remanded. Specifically, Defendants argue that the FBI criminal background checks have been completed as to all the Plaintiffs, and thus no case or controversy exists as against the Defendant FBI. As to Plaintiffs Ainslie, Aleman, Ali, Bello-Camp, Elsawalhi, and Gomez, Defendants contend their § 1447(b) claims have been mooted entirely by the approval of their naturalization applications. Plaintiff's counter that the court may not consider the approvals because the processing of certain applications is outside of the four corners of the complaint.

With respect to those Plaintiffs whose applications have been approved, dismissal is appropriate. Mootness is a jurisdictional issue. *Frulla v. CRA Holdings, Inc.*, 543 F.3d 1247, 1250 (11th Cir. 2008). As such, in considering Defendants' Rule 12(b)(1) motion, the court may consider matters outside the complaint where, as here, the motion is a factual attack challenging the court's subject matter jurisdiction. Consequently, the court may properly consider the fact that name checks for all the named Plaintiffs are completed and a number of the Plaintiffs' applications have already been processed and approved. In so doing, it is apparent that no case or controversy exists any longer as against the FBI. Nor is there a case

---

[14]USCIS asserts that there is no requirement that it render a decision within 120 days.

or controversy between any Defendant and those Plaintiffs already approved for citizenship who seek a remedy pursuant to § 1447(b). Any possible remedy under that provision has already been achieved. Accordingly, as to those Plaintiffs whose naturalization applications have already been approved, namely, Ainslie, Aleman, Ali, Bello-Camp, Elsawalhi, and Gomez, their § 1447(b) claims should be dismissed as moot.

As to named Plaintiffs whose applications have not yet been fully adjudicated, i.e., Adelizee, Hernandez, Goubrial, Brimo, Dunn, Elmcharfl, and Gulyanskiy, Defendants argue that the court should remand their claims under § 1447(b), without instructions, for the final processing of their applications. In support of their position, Defendants assert that the USCIS has the experience and expertise to assess naturalization applications, and the court should remand to the agency primarily charged with making such decisions. In response, Plaintiffs oppose a remand and urge that the Defendants have breached their duty to adjudicate the applications within 120 days after the initial examination; no deference is owed the Defendants where approval of an application is mandatory for those otherwise meeting the eligibility requirements; and because a remand would seriously harm the legal position of the members of the proposed class.

Here, I recognize that many of these Plaintiffs have waited years for their applications to be processed, and thus prompt attention is warranted. However, in my view, the more expeditious means of finally adjudicating any outstanding application is to remand the same to the USCIS under directions from this court. While section 1447(b) gives the court discretion to adjudicate naturalization applications, the majority of courts considering the matter have acknowledged that the USCIS's primary function is to evaluate the merits of such applications and it is better-equipped to do so. *See Rangoonwala v. Swacina*, No. 08-

21588-CIV, 2008 WL 5070299, at *2 (S.D. Fla. Nov. 25, 2008); *see also INS v. Ventura*, 537 U.S. 12, 17 (2002) ("the agency can bring its expertise to bear on the matter; it can evaluate the evidence; . . . it can, through informed discussions and analysis, help a court later determine whether its decision exceeds the leeway that the law provides"). Thus, as to the remaining Plaintiffs whose applications have not yet been finally adjudicated, I recommend that the court remand their applications to the USCIS with specific instructions for those applications to be fully processed and determined within 60 days from the date of the order.[15]

As for Plaintiff Marquez, whose application has been denied, Defendants suggest that the matter should be remanded to enable USCIS to reinstate or revisit Marquez's application. Marquez asserts that the exclusive jurisdiction vested in the court by § 1447(b) renders the denial of his claim a nullity, and he urges the court to adjudicate his claim.

To the extent that Marquez's claim under § 1447(b) is founded on the FBI's failure to complete his name check, I find that his claim, like the others, is moot. So too is his broader claim that the application was not adjudicated within 120 days. For this reason, I recommend that Marquez's claim be dismissed. Alternatively, for the reasons discussed above, namely, that the USCIS is in the better position to adjudicate naturalization applications, I recommend that Marquez's claim be remanded to the USCIS so that he may exhaust his administrative remedies, including the request for a hearing before an immigration officer pursuant to 8 U.S.C. § 1447(a), after which he may then seek judicial review as set forth in 8 U.S.C. § 1421(c).

---

[15]While this recommendation imposes a relatively short time frame for action, the USCIS has had these applications for a very extended period of time and surely should to able to finish its work on the applications in short order.

B.

In Counts Two and Three of the Amended Complaint, Plaintiffs allege violations of the APA. By Count Two, Plaintiffs allege that Defendants have violated, and continue to violate, the requirement that administrative agencies conclude matters presented "within a reasonable time," contrary to the provisions of 5 U.S.C. § 555(b).[16] More particularly, Plaintiffs maintain that the Defendants' failure to timely complete name checks and render a decision on Plaintiffs' naturalization applications within 120 days of the date of their examination violates numerous provisions of the APA.[17] Defendants again counter that the claims are moot for the named Plaintiffs whose applications have been approved. As for the remaining named Plaintiffs, Defendants assert that each has an adequate remedy at law under § 1447(b) such that the APA is inapplicable. In any event, Defendants urge that judicial review is precluded under the APA where, as here, the agency action is committed to agency discretion by law. Plaintiffs reply that the claims are not moot and § 1447(b) does not provide meaningful relief for the broad systemic challenges brought on behalf of the proposed class. In Plaintiffs' view, judicial review is appropriate where the approval process for naturalization applications is a nondiscretionary function once the applicant establishes his eligibility for naturalization.

Plaintiffs are correct that the APA generally requires agencies to conclude matters presented within a reasonable time and directs that a court "shall compel agency action

---

[16]This provision provides in pertinent part, "[w]ith due regard for the convenience and necessity of the parties . . . and within a reasonable time, each agency shall proceed to conclude a matter presented to it." 5 U.S.C. § 555(b)

[17]In particular, Plaintiffs point to the following provisions: 8 U.S.C. §§ 335, 555(b), 706(1), 706(2)(A), 706(2)(C), 706(2)(D), and 1446(d).

unlawfully withheld or unreasonably delayed." 5 U.S.C. § 706.  However, as Defendants

note, it also prescribes that final agency action for which there is no other adequate remedy in

a court is subject to review.  5 U.S.C. § 704.  Since individuals are afforded an adequate

remedy under § 1447(b) to challenge untimely action on naturalization applications, there is

no right to judicial review afforded under the APA.  More fundamentally, the provisions of

the APA are inapplicable to agency action committed to agency discretion by law.  5 U.S.C.

§ 701.  As set forth in section I-B above, a number of courts agree with Defendants' argument

under these latter two provisions and find no basis for judicial review.  However, I find it

unnecessary to delve deeply into the analysis of these provisions.  In my view, it is sufficient

to again find that, insofar as the complaint is that the name checks have not been completed,

the claims are moot.  As for those Plaintiffs whose naturalization applications have been

approved, their APA claims are moot and appropriately dismissed.  Notwithstanding the

delay, those particular Plaintiffs have achieved their desired result, i.e. processing and

approval of their applications for naturalization.  Thus, any further court action on their behalf

would be merely advisory as no case or controversy exists as to those Plaintiffs.  Further, I am

obliged to find that § 1447(b) provides an adequate and appropriate remedy to redress each

remaining named Plaintiffs' complaints that their applications have not been timely

adjudicated.  This conclusion properly ends this claim.  While Plaintiffs urge that the court

should not remand the cases of these individuals back to the USCIS because of the prejudice

such action will cause their proposed class action, as set forth below, these Plaintiffs can no

longer be said to be typical of many members of the proposed class and declining to remand their cases would not serve their purposes.[18]

Here, given my recommendation that the applications of the non-moot Plaintiffs are best addressed entirely under the provisions of § 1447(b), and given that a remand pursuant to such recommendation leaves no Plaintiffs to lead the charge on this count, I recommend that upon the remand proposed under Count One, Count Two should be dismissed.

In Count Three, Plaintiffs allege that the FBI name check requirement, which was implemented without public notice and without providing a period for public comment, violates the APA, 5 U.S.C. § 553.[19] Plaintiffs urge that such a rule or policy is without force and effect.[20] They seek a declaration to that effect and injunctive relief on their own behalf and as to class representatives. Defendants counter that Plaintiffs lack standing to challenge

---

[18]I recognize that at least one court has adopted Plaintiffs' argument on similar claims and declined to remand. *See Roshandel v. Chertoff*, 2008 WL 1969646 (W.D. Wash. May 5, 2008). (Doc. 25-2). In *Roshandel*, the court determined that the systemic relief plaintiffs sought pursuant to the APA was not duplicative of that available to them under § 1447(b), without the APA plaintiffs could not obtain a declaration of the unlawfulness of the policy and practice of delaying naturalization applications, and jurisdiction existed to proceed under the APA. *See also Yakubova v. Chertoff*, No. 06-cv-3203, slip op. (E.D. N.Y. Nov. 2, 2006). However, the circumstances in *Roshandel* were far different. In that case, there were plaintiffs before the court whose name checks had not been completed and the court had already certified a class under both the APA and §1447(b). Thus, thus remand of the non-moot plaintiffs was no longer an option. Here, all name checks have been completed and § 1447(b) affords an adequate remedy for any Plaintiff whose claims have not been entirely mooted out by the final adjudication of their application.

[19]Under § 533, general notice of terms and authority for a proposed substantive rule and notice of the time, place, and nature of the rule making proceedings must be published at least thirty days before the effective date of the rule in the Federal Register, unless personal service is made. This provision does not apply to interpretative rules or general statements of policy. *See* 5 U.S.C. § 553(b)(3)(A).

[20]*See Chrysler Corp. v. Brown*, 441 U.S. 281, 313 (1979); *United States v. Goodner Bros. Aircraft, Inc.*, 966 F.2d 380, 384 (8th Cir. 1992).

the name check rule because their name checks have already been completed.  In any event,

they contend that the November 2002 decision by the USCIS to require name checks merely

reflects its interpretation of the appropriate scope of the congressionally mandated criminal

background check.[21]  They urge the action did not violate the APA because it exempts

"interpretive rules, general statements of policy, or rules of agency organization, procedure,

or practice" from the notice-and-comment requirement.  *See* 5 U.S.C. § 553(b).  Lastly,

Defendants contend that the court should decline to hear the claim under the doctrine of

prudential mootness, which provides for abstention when "a controversy, not

[constitutionally] moot, is so attenuated that considerations of prudence and comity for

coordinate branches of government counsel the court to stay its hand, and to withhold relief it

has the power to grant."  *Chamber of Commerce v. U.S. Dep't of Energy*, 627 F.2d 289, 291

(D. D.C. 1980).  Asserting that the FBI and USCIS have taken steps to improve their policies

and procedures to address the backlog in name checks, Defendants urge that the court should

decline jurisdiction.

 Standing is an Article III requirement.  *Lujan v. Defenders of Wildlife*, 504 U.S. 555,

560 (1992).  Standing requires as an "irreducible constitutional minimum," the plaintiff

demonstrate that (1) he has suffered an injury in fact; (2) that the injury was caused by

defendant's conduct; and (3) that a favorable decision on the merits likely will redress the

injury.  *Id.* at 560-61.  Defendants argue that because the name checks have been completed

for each named Plaintiff, none can claim the requisite injury in fact from continued

---

[21]Again, Defendants' argument finds support in a number of decisions.  Numerous
courts have determined that the name check is properly a part of the full criminal background
check.  *See Hani*, 2008 WL 2026092, at *5 (W.D. Ky. May 8, 2008); *Wang*, 2008 WL 45492,
at *2; *Ahmadi*, 2007 WL 3022573, at *8-9; *Aman*, 2007 WL 2694820, at *3.

enforcement of the rule or policy that a favorable judgment will redress and thus no Plaintiff has standing. *See* (Doc. 11 at 9-10)(citing *Arden Wood, Inc. v. USCIS*, 480 F. Supp. 2d 141, 147 (D. D.C. 2007)).

I agree. Here, none of the Plaintiffs can demonstrate at this point in time the necessary injury in fact which will be redressed should they succeed on the merits of the claim. As to these Plaintiffs, the suit is little more than an academic pursuit and they no longer have any standing to bring it. *Id.* at 147-49. The following quote is instructive of the appropriate outcome of their claims:

> Early in its history, this Court held that it had no power to issue advisory opinions, and it has frequently repeated that federal courts are without power to decide questions that cannot affect the rights of litigants in the case before them. To be cognizable in a federal court, a suit "must be a real and substantial controversy admitting of specific relief through a decree of conclusive character, as distinguished from an opinion advising what the law would be upon a hypothetical state of facts.

*Merkey v. Bd. of Regents of the State of Fla.*, 493 F.2d 790, 791 (5th Cir. 1974) (citing *North Carolina v. Rice*, 404 U.S. 244, 246 (1971)). On this conclusion, the court need not Defendants' other arguments.

Because the Plaintiffs lack standing to assert the claim in Count III, I recommend dismissal of the this APA claim.


IV.

By their motion for class certification, Plaintiffs move to certify the class of:

> All lawful permanent residents of the United States residing in the Middle District of Florida who have submitted naturalization

> applications to CIS but whose naturalization applications have not
> been determined within 120 days of their initial examination.

(Doc. 27 at 2).  As noted in Defendants' response, this proposed class would encompass more

than just those whose naturalization applications have been delayed because of the FBI name

checks and would include all persons whose applications have not been determined within

120 days of their initial examination regardless of reason.  For reasons set forth below,

Defendants oppose the motion.  (Doc. 35).

As a threshold matter, the court must ascertain whether the individually named

Plaintiffs have constitutional standing to raise their claims.  *See Murray v. Auslander*, 244

F.3d 807, 810 (11th Cir. 2001); *Carter v. West Publ'g Co.*, 225 F.3d 1258, 1262-63 (11th Cir.

2000); *Prado-Steiman ex rel. Prado v. Bush*, 221 F.3d 1266 (11th Cir. 2000).  It is not enough

that a named plaintiff can establish a case or controversy between himself and the defendant.

"Rather, each claim must be analyzed separately, and a claim cannot be asserted on behalf of

a class unless at least one named plaintiff has suffered the injury that gives rise to that claim."

*Griffin v. Dugger*, 823 F.2d 1476, 1483 (11th Cir. 1987).  "[A] class representative must be

part of the class and 'possess the same interest and suffer the same injury' as the class

members."  *Gen. Tel. Co. of Southwest v. Falcon*, 457 U.S. 147, 156 (1982) (quoting *East

Texas Motor Freight Sys., Inc. v. Rodriguez*, 431 U.S. 395, 403 (1977)).

Next, the named Plaintiffs must satisfy the requirements of Federal Rule of Civil

Procedure 23(a).  That rule provides:

> One or more members of a class may sue or be sued as
> representative parties on behalf of all only if (1) the class is
> so numerous that joinder of all members is impracticable,
> (2) there are questions of law or fact common to the class,
> (3) the claims or defenses of the representative parties are
> typical of the claims or defenses of the class, and (4) the

representative parties will fairly and adequately protect the
interests of the class.

Fed. R. Civ. P. 23(a). These requirements are commonly referred to as (1) numerosity;

(2) commonality; (3) typicality; and (4) adequacy of representation. *Amchem Prods., Inc. v.*

*Windsor*, 521 U.S. 591, 614 (1997); *Falcon*, 457 U.S. at 156; *Jones v. Firestone Tire and*

*Rubber Co.*, 977 F.2d 527, 534 (11th Cir. 1992). The burden of proving these prerequisites is

on the representative parties seeking class certification. *Rutstein v. Avis Rent-a-Car Sys., Inc.*,

211 F.3d 1228, 1233 (11th Cir. 2000); *Heaven*, 118 F.3d at 737.[22]

By their motion, Plaintiffs urge that they have met the requirements of Rule 23(a).

They assert that there are hundreds of individuals in this district whose naturalization

applications have been delayed. Using national figures, Plaintiffs extrapolate that there may

be more than 750 lawful residents in this district whose naturalization applications have been

delayed more than 30 months. (Doc. 27 at 5). Thus, they conclude that the proposed class

easily meets the numerosity requirement. Similarly, Plaintiffs urge the commonality

requirement is met as evidenced by the common facts that all class members passed their

---

[22]A plaintiff meets the "commonality" requirement by identifying specific questions of
law and fact common to the named plaintiffs and putative class members. Class relief is
appropriate when the "issues involved are common to the class as a whole" and when they
"turn on questions of law applicable in the same manner to each member of the class."
*Falcon*, 457 U.S. at 155 (quoting *Califano v. Yamasaki*, 442 U.S. 682, 701 (1979)). Plaintiffs
may satisfy the "typicality" requirement upon showing that there is a "strong similarity of
legal theories," despite substantial factual variations. *Murray*, 244 F.3d at 811 (quoting
*Appleyard v. Wallace*, 754 F.2d 955, 958 (11th Cir. 1985)); *see also Kornberg v. Carnival
Cruise Lines, Inc.*, 741 F.2d 1332, 1337 (11th Cir. 1984) (typicality may be demonstrated
where Plaintiffs' claims "arise from the same event or pattern or practice and are based on the
same legal theory" as the claims of the class). "Traditionally, commonality refers to the
group characteristics of the class as a whole and typicality refers to the individual
characteristics of the named plaintiff in relation to the class." *Prado-Steiman v. Bush*, 221
F.3d at 1279.

naturalization examination; none had their application adjudicated within 120 days of the examination; and the delay was likely caused by the FBI name check.  Additionally, Plaintiffs argue that there are similar questions of law common to the class claims including the Defendants' policies and procedures related to the FBI name check requirement and whether it violates the APA's requirement that government agencies conclude matters within a reasonable time and whether the name check violated the APA's requirement of public notice and comment.  Plaintiffs contend that they are "typical" of the proposed class because they have experienced the delays associated with the FBI name checks and assert they will fairly and adequately represent the class.

In addition to satisfying the requirements of Rule 23(a), Plaintiffs acknowledge they must meet one of the requirement of Rule 23(b).  Plaintiffs submit that the instant action satisfies the requirements of Rule 23(b)(2) because the Defendants have refused to act on grounds that apply generally to the class such that injunctive or declaratory relief is appropriate.  Specifically, Plaintiffs argue that the agency delay in these situations is exactly the type of systemic abuse for which class certification is appropriate.[23]

Defendants counter again that the FBI name checks have been completed for all of the named Plaintiffs, and thus Plaintiffs lack standing to represent the proposed class.  They urge that whether Plaintiffs have standing to represent the proposed class is a threshold matter to be determined notwithstanding the requirements of Rule 23.  *See Davis v. Coca-Cola*

---

[23]Plaintiffs again cite two district court opinions wherein courts have granted class certification or urged settlement in cases similar to the instant matter.  *See Yakubova,* 1:06-cv-03202-ERK-ELM, slip op. (E.D. N.Y. July 7, 2008); *Roshandel v. Chertoff*, 554 F. Supp.2d 1194 (W.D. Wash. 2008).  Defendants deny that these two cases evidence a "national trend" toward class certification in naturalization cases.  (Doc. 35 at 15).

*Bottling Co.*, 516 F.3d 955, 965 (11th Cir. 2008). The fundamental purpose behind the standing requirement is "to ensure that the parties before the court have a concrete interest in the outcome of the proceedings such that they can be expected to frame the issues properly." *Harris v. Evans*, 20 F.3d 1118, 1121 (11th Cir. 1994). By their proposed class action, Plaintiffs seek to challenge the name check policy, and yet, none of the named Plaintiffs have pending FBI name checks. Thus, Defendants submit, the named Plaintiffs lack the "concrete interest" in the validity of the name check policy necessary to establish standing. *See id.*

Defendants also argue that the exception to the mootness doctrine for disputes "capable of repetition, yet evading review" is inapplicable here where it is highly unlikely that these named Plaintiffs would ever have to repeat the process and thereby be subjected to the same delays again. *See Sze v. INS*, 153 F.3d 1005, 1009-10 (9th Cir. 1998); *see also L'Hommeus v. Mukasey*, No. 2:07-cv-618-FtM-29DNF, slip op. (M.D. Fla. Oct. 13, 2008) (must be reasonable expectation that the same complaining party would be subjected to the same action again).

Even if the court finds that Plaintiffs have standing to represent the proposed class, Defendants urge that Plaintiffs fail to meet the numerosity, commonality, typicality, and adequacy requirements, and thus class certification must be denied. Plaintiffs cannot show numerosity where there are only eight applicants in this district with pending FBI name checks.[24] Additionally, Plaintiffs cannot demonstrate commonality or typicality because none of the named class members have pending FBI name checks. Defendants urge that since most of the members of the proposed class have already had name checks, any relief under this

---

[24]In support, Defendants proffer the Declaration of USCIS District Director, Kathy Redman. (Doc. 35-2, ¶ 12).

provision would not flow to the class as a whole as required by applicable law.  Lastly, Defendants submit that Plaintiffs do not satisfy the requirements of Rule 23(b)(2), essentially because the Defendants have not "refused to act" in contemplation of this provision but instead continue to investigate and adjudicate applications.[25]

The same considerations set forth above for dismissing or remanding the Plaintiffs' claims suggest that the Plaintiffs' motion for class certification should be denied as well. Should the court follow the above recommended action, there will be no named Plaintiffs left to lead a class action on the APA claims.  The claims that the Defendants have unreasonably delayed action on Plaintiffs' applications by reason of the FBI name checks in violation of either § 1447(b) or the APA are moot.  The exception to the mootness doctrine for disputes "capable of repetition, yet evading review" appears inapplicable here where it is highly unlikely that these Plaintiffs will ever have to repeat the process and thereby be subjected to the same delays again.  *See Sze*, 153 F.3d at 1009-10; *see also Liu v. INS,* 274 F3d 533, 536 (D. D.C. 2001).  Additionally, as set forth above, Plaintiffs lack standing under the APA to attack the rule or policy calling for the FBI name checks.  Given the circumstances of this case, I agree with the Defendants that the named Plaintiffs no longer can claim standing to act on behalf of the proposed class.

As for the Rule 23 considerations, briefly, even assuming that Plaintiffs have standing and can satisfy the numerosity requirement, these same Plaintiffs can no longer

_____

[25]There argument also notes that 8 U.S.C. § 1447(b) does not authorize injunctive or declaratory relief.  Rather, the remedies available under that provision are adjudication of the application by the court or remand to the USCIS for adjudication.  When read as a whole, Plaintiffs' argument suggests to me that the class action remedy is sought pursuant to the APA and not under § 1447(b).

represent that their claims are "typical" of the class they proposed to represent. Given that the primary complaint is the systemic failure to complete the purportedly unauthorized and unenforceable FBI name checks in a timely manner and given the fact that all of the named Plaintiffs' name checks have been completed, the court should conclude that none of the named Plaintiffs are any longer similarly situated with those in the proposed class who have not had such name checks. Further, at this point, these Plaintiffs no longer have an actual stake in the outcome of the proposed class action as it seeks to challenge the November 2002, requirement for FBI name checks. Stated otherwise, they fail to satisfy the typicality requirement. Also, as noted above, the proposed class would extend beyond that group whose naturalization applications are delayed because of pending FBI name checks to include all lawful, permanent residents whose naturalization applications have not been determined within 120 days of the date of their initial examination regardless of the reason. This broadly worded class raises concerns as to whether the named Plaintiffs share common issues of fact with the class as a whole. In my view, the individualized nature of each naturalization investigation suggests there can be no sufficient commonality of facts on the timeliness inquiry to satisfy Rule 23(a) requirements. On these findings, the court need not reach the Rule 23(b) issue, and Plaintiffs' motion (Doc. 27) should be denied.

V.

In conclusion, it is RECOMMENDED that **Defendants' Combined Motion to Dismiss, Remand or, in the Alternative, Sever** (Doc. 20) be **GRANTED** as set forth herein[26] and that Plaintiffs' **Motion to Certify Class** (Doc. 27) be **DENIED**.

Respectfully submitted on this
14th day of February 2009.

THOMAS B. McCOUN III
UNITED STATES MAGISTRATE JUDGE

## **NOTICE TO PARTIES**

Failure to file written objections to the proposed findings and recommendations contained in this report within ten days from the date of its service shall bar an aggrieved party from attacking the factual findings on appeal and a *de novo* determination by a district judge. 28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 72; M.D. Fla. R. 6.02; *see also* Fed. R. Civ. P. 6; M.D. Fla. R. 4.20.

Copies to:
United States District Judge
Counsel of Record

---

[26]As noted above, the underlying assumption in this report and recommendation is that the court and the USCIS have concurrent jurisdiction such that any actions taken by the USCIS since the filing of the suit are not null and void. As noted, many courts find that the filing of suit under § 1447(b) vests the district court with exclusive jurisdiction. Should the court agree, the recommendation made herein would then be that the applications of all the Plaintiffs should be remanded under § 1447(b) to the USCIS with specific instructions for those applications to be fully processed and determined within 60 days from the date of the order.